IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NOTHERN DIVISION

| | | |
|---|---|---|
| BRUCE LAMAR HILL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 2:07-CV-266-WKW-WC |
| ALABAMA DEPARTMENT OF | ) | |
| CORRECTIONS, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**SUPPLEMENTAL SPECIAL REPORT**

COME NOW the Defendants, **Otis Barnes, Bobby Barrett, Leon Bolling, Clarence Hall, Irvin Harris, William Jackson, Nathaniel McCray, Michael Rowe, William Streeter, W.G. Rowell, and Allan Smith**, by and through undersigned counsel, and in accordance with this Honorable Court's November 6, 2007 Order, offer the following supplemental written report.

**PARTIES**

1. The Plaintiff, Bruce Lamar Hill, is an inmate of the Alabama Prison System.

2. Defendant Otis Barnes is a Correctional Officer I for the Alabama Department of Corrections and is currently assigned to Kilby Correctional Facility.

3. Defendant Bobby Barrett is a Correctional Captain for the Alabama Department of Corrections and is currently assigned to Kilby Correctional Facility.

4. Defendant Leon Bolling is a Correctional Captain for the Alabama Department of Corrections and is currently assigned to Kilby Correctional Facility.

5. Defendant Clarence Hall is a Correctional Officer I for the Alabama Department of Corrections and is currently assigned to Kilby Correctional Facility.

6. Defendant Irvin Harris is a Correctional Officer I for the Alabama Department of Corrections and is currently assigned to Kilby Correctional Facility.

7. Defendant Willie Jackson is a Correctional Officer I for the Alabama Department of Corrections and is currently assigned to Kilby Correctional Facility.

8. Defendant Nathaniel McCray is a Correctional Officer I for the Alabama Department of Corrections and is currently assigned to Kilby Correctional Facility.

9. Defendant Michael Rowe is a Correctional Officer I for the Alabama Department of Corrections and is currently assigned to Kilby Correctional Facility.

10. Defendant William Streeter is a Correctional Sergeant for the Alabama Department of Corrections and is currently assigned to Kilby Correctional Facility.

11. Defendant W.G. Rowell is a Warden II for the Alabama Department of Corrections and is currently assigned to Kilby Correctional Facility.

12. Defendant Allen Smith is a Correctional Sergeant for the Alabama Department of Corrections and is currently assigned to the Frank Lee Youth Center.

**EXHIBITS**

EXHIBIT 1 – Affidavit of W.G. Rowell

**PLAINTIFF'S ADDITIONAL CLAIMS**

In addition to the claims originally asserted by Plaintiff and addressed by these Defendants in the Original Special Report (Doc. 40), Plaintiff now claims the Defendants housed him with mental health inmates during his confinement at the Kilby Correctional

Facility from February 16, 2007, until June 22, 2007, and that this somehow violated his constitutional rights.

## DEFENDANTS' RESPONSE

1. The Defendants deny that they violated the Plaintiff's constitutional rights.

2. The Defendants deny each and every material allegation not specifically admitted herein and demand strict proof thereof.

3. The Plaintiff has failed to state a claim upon which relief may be granted.

4. The Defendants are immune from suit under the Eleventh Amendment to the United States Constitution.

5. The Defendants are immune from suit due to qualified immunity.

## STATEMENT OF ADDITIONAL FACTS

In addition to the facts presented by these Defendants in their original Special Report (Doc. 40), the Defendants would add the following facts:

As stated in the Statement of Facts in the Original Special Report (Doc. 40), on March 13, 2007, Plaintiff was moved to O-Unit Cell #6 at Kilby Correctional Facility by Sgt. William Streeter who was Segregation Commander on that day. Exhibits 3 and 4 to the Original Special Report (Doc. 40). Plaintiff contends that this is the "Mental Health Unit". Kilby does not have a mental health unit. Exhibits 2 and 4 to the Original Special Report (Doc. 40); Exhibit 1 to this Supplemental Report. In August of 2006, well before Plaintiff was housed at Kilby, all of Kilby's mental health inmates were transferred to the new Mental Health Unit at Bullock Correctional Facility. Exhibit 1 to this Supplemental Report. Mental health inmates are housed at Bullock Correctional Facility which is specifically situated for the treatment of inmates with mental health issues. . Exhibits 2

and 4 to the Original Special Report (Doc. 40). The former mental health unit at Kilby was converted to an annex for the Segregation Unit. . Exhibits 2 and 4 to the Original Special Report (Doc. 40); Exhibit 1 to this Supplemental Report.

Because Kilby Correctional Facility is the receiving unit for new inmates from county jails, Kilby does occasionally get an inmate in need of mental health services who must be separated from the general population. Exhibit 1 to this Supplemental Report. These inmates are kept for short periods of time and then transferred to either Bullock Correctional Facility or Donaldson Correctional Facility (the designated mental health units). Exhibit 1 to this Supplemental Report. Plaintiff is in fact a mental health inmate (MH-1) who took medication while at Kilby. Exhibit 1 to this Supplemental Report. Mental health inmates who are not out of control are housed in general populations in every prison. Exhibit 1 to this Supplemental Report. At no time has Plaintiff's constitutional rights been violated. Exhibits 1-16. None of the defendants have knowledge of plaintiff's alleged medical conditions sufficient to impose liability on them. Exhibits 1-16 to the Original Special Report (Doc. 40); Exhibit 1 to this Supplemental Report.

## SUPPLEMENTAL ARGUMENT

In addition to the argument made by these Defendants in their Original Special Report (Doc. 40), these Defendants would add the following:

Plaintiff was housed in segregation for the entire time he was at Kilby. During his stay at Kilby, he was moved to the segregation annex which was formerly the mental health unit before it was moved to Bullock Correctional months before Plaintiff came to Kilby. It would however be the area where mental health inmates would be housed until

they could be moved. Plaintiff was himself designated as a mental health inmate. It is inconceivable how an inmate who was himself designated as a mental health inmate in need of medication can complain about possibly being housed with other mental health inmates. Regardless, even if he were not designated this way, it would still not be a violation of his constitutional rights to house him in segregation where he was housed.

Plaintiff alleges that housing him with other mental health inmates (along with other conditions) violated the Eighth Amendment against cruel and unusual punishment. Although the Eighth Amendment prohibits "cruel and unusual punishment" of inmates, it does not require that prisons be comfortable. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) A valid Eighth Amendment claim has two components: (1) an objective component which requires that challenged conditions be "sufficiently serious;" and (2) a subjective component which requires that prison officials exhibit "deliberate indifference" to prisoner health or safety. Farmer, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 302-03 (1991)); *Jordan v. Doe*, 38 F.3d 1559, 1564 (11th Cir. 1994); *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994); *Purcell ex rel. Estate of Morgan v. Toombs County, Ga,* 400 F.3d 1313 (11th Cir. 2005).

The Supreme Court has held that deliberate indifference describes a state of mind more blameworthy than negligence. *Farmer*, 511 U.S. at 834. "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837

When evaluating prison conditions, courts should keep in mind that a prison population is comprised of a "large, confined population of convicted felons, not a nursery school." *Battle v. Anderson*, 788 F.2d 1421, 1426 (10th Cir. 1986)

> In the Eleventh Circuit, to establish an Eighth Amendment violation of cruel and unusual punishment, a plaintiff must show: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

"The objective component 'embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ,"' 'but must be balanced against competing penological goals.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579(8th Cir. 1968)  Although several conditions of confinement in combination may also establish an Eighth Amendment violation, to be actionable they must have "a mutually enforcing effect that produces the depravation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id*. at 305

The Eighth Amendment "does not mandate comfortable prisons," *Rhodes*, 452 U.S. at 349 — and permits prison conditions that are "restrictive and even harsh," *Farmer v. Brennan*, 511 U.S. at 833 (quoting *Rhodes,* 452 U.S. at 347)  "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (excessive force against prisoner may

6

be cruel and unusual if it inflicts wanton and unnecessary pain though no serious injury) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (double-bunking of inmates in single-occupancy cells not cruel and unusual)). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347)  This proposition "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (cruel and unusual to require denationalization of certain wartime deserters)  "Today the Eighth Amendment prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain,' or are grossly disproportionate to the severity of the crime." *Rhodes*, 452 U.S. at 346 (citations omitted)

The Plaintiff has failed to show an "objective" violation of the Eighth Amendment.  He has failed to allege the deprivation of a single identifiable need such as food, warmth or exercise. The Plaintiff's claims do not rise to the level of a constitutional violation.

The "deliberate indifference" standard is comprised of two parts.  First, the standard requires the alleged deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834 (citations omitted).  "[A] prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id*. (internal quotes and citations omitted).  Second, in *Farmer*, the Supreme Court adopts a subjective test for "deliberate indifference," holding:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be

>drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. Furthermore, the known risk of injury must be "'a strong likelihood, rather than a mere possibility'" before a correctional officer's failure to protect can constitute deliberate indifference. *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (quoting *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983)). In addition, the plaintiff must provide proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional violation to establish a claim under 42 U.S.C. §1983. *Zatler*, 802 F.2d at 401. When defendants are sued in their individual capacities, the causation inquiry must be more "refined and focused." *Id*.

The Courts can not allow the advantage of hindsight to determine whether conditions of confinement amounted to "cruel and unusual" punishment. *See Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir.1990). Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts. To be deliberately indifferent a prison official must know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Purcell ex rel. Estate of Morgan v. Toombs County, Ga,* 400 F.3d 1313 (11th Cir. 2005). Plaintiff has simply failed to show any evidence whatsoever that being housed with other mental health inmates would rise to the level of an excessive risk to him giving rise to an Eighth Amendment violation.

## CONCLUSION

There are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law. WHEREFORE, the Defendants respectfully request that this Honorable Court dismiss the claims against them.

Respectfully submitted,

TROY KING
Attorney General

/s/ Benjamin H. Albritton
Benjamin H. Albritton (ASB-0993-R67B)
Assistant Attorney General

ADDRESS OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7300

## CERTIFICATE OF SERVICE

I hereby certify that I have, this the 21st day of November, 2007, served a copy of the foregoing upon the Plaintiff by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Bruce Lamar Hill, AIS 138707
Holman Correctional Facility
Holman 3700
Atmore, Alabama 36503-3700

/s/ Benjamin H. Albritton
Benjamin H. Albritton
Assistant Attorney General

9

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BRUCE LAMAR HILL, 138707
PLAINTIFF

CIVIL ACTION: 2:07-CV-266-WKW

VS
AL DEPT. OF CORRECTIONS, ET.AL.
    DEFENDANT

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said county and State of Alabama at large, personally appeared W. G. Rowell who being know to me and being by me first duly sworn, deposes and says on oath as follows:

My name is W. G. Rowell, and I am presently employed as a Warden II with the Alabama Department of Corrections, Kilby Correctional Facility, Mt. Meigs, Alabama. I am over nineteen (19) years of age.

In August of 2006, all Mental Health inmates were transferred to the new Mental Health Unit at Bullock Correctional Facility upon it opening. Kilby was no longer designated as a Mental Health Unit. The block that was used for mental health became an additional Segregation Unit. However, since Kilby is the Receiving Center for new inmates from the County Jails, we do occasionally get an inmate in need of Mental Health services who must be separated from the general population. These inmates by regulations are only kept for short periods of time until moved to either Bullock or Donaldson (the designated mental health units). Since the cells in that Segregation Unit area were set up for that use when Kilby did have mental health, that is where they would be housed until they could be moved. Inmate Bruce Hill is in fact a mental health inmate (MH-1) who did take medication while here. However, even if he had not been it would not be a violation of his rights to be housed it that unit. There are mental health inmates housed even in Populations at every prison who are not out of control.



1

I categorically deny that I violated any Inmate Hills constitutional rights in any manner.

_____
Warden II W. G. Rowell
Kilby Correctional Facility


State of Alabama
Montgomery County

Sworn to and subscribed before me and under my hand and official seal this the 19th day of April, 2007.

_____
Betty S. Carr, Notary Public
My comm. expires 12-17-09.

2