IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRUCE LAMAR HILL, | ) | |
| AIS #138707, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:07-CV-266-WKW |
| | ) | [WO] |
| | ) | |
| DEPUTY WARDEN ROWELL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION

In this 42 U.S.C. § 1983 action, Bruce Lamar Hill ["Hill"], a recalcitrant state inmate, challenges conditions of confinement and actions taken against him during his incarceration at the Kilby Correctional Facility ["Kilby"].  Hill names W. G. Rowell, a deputy warden, correctional officers Barrett, Bolling, Streeter, Smith, Harris, Hall, Jackson, Barnes, Rowe, and McCray, Linda Bell, the director of nursing at Kilby, and Prison Health Services, Inc., the health care provider at the time of his complaint, as defendants in this cause of action.  Hill seeks a declaratory judgment, injunctive relief and monetary damages from the defendants for the alleged violations of his constitutional rights.

The defendants filed special reports, answers and supporting evidentiary materials

addressing each of Hill's claims for relief.  Pursuant to the orders entered herein, the court deems it appropriate to treat these reports as motions for summary judgment.  *Order of August 1, 2007 - Court Doc. No. 54*.  Thus, this case is now pending on the defendants' motions for summary judgment.  Upon consideration of these motions, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the reports, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district

---

[1]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

court of the basis for its motion, and identifying those portions of the [record, including

pleadings, discovery materials and affidavits], which it believes demonstrate the absence

of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The movant may meet this burden by presenting evidence indicating there is no dispute of

material fact or by showing that the nonmoving party has failed to present evidence in

support of some element of its case on which it bears the ultimate burden of proof. *Id.* at

322-324.

　　　The defendants have met their evidentiary burden and demonstrated the absence of

any genuine issue of material fact.  Thus, the burden shifts to the plaintiff to establish, with

appropriate evidence beyond the pleadings, that a genuine issue material to his case exists.

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324;

Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and

supported, an opposing party may not rely merely on allegations or denials in its own

pleading; rather, its response must ... set out specific facts showing a genuine issue for

trial.").  A genuine issue of material fact exists when the nonmoving party produces

evidence that would allow a reasonable fact-finder to return a verdict in its favor.

*Greenberg*, 498 F.3d at 1263.

　　　In civil actions filed by inmates, federal courts

　　　must distinguish between evidence of disputed facts and disputed matters of

3

> professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motions for summary judgment, Hill is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to

withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will

5

preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine

issue of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11ᵗʰ Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Hill fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III. DISCUSSION

### A. Eleventh Amendment Immunity[2]

To the extent Hill sues the defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11ᵗʰ Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are

---

[2]Eleventh Amendment immunity does not foreclose suits for equitable, i.e., injunctive and/or declaratory, relief; rather, if applicable, it forecloses suits for compensable damage awards.

immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994). Thus, the defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B. Lack of Standing - Claims Alleged on Behalf of Other Inmates

Hill seeks to present claims on behalf of other inmates confined at Kilby. Standing is a cornerstone of American jurisprudence on which jurisdiction lies. "[A] litigant may only assert his own constitutional rights or immunities." *McGowan v. Maryland*, 366 U.S. 420, 429 (1961), citing *United States v. Raines*, 362 U.S. 17, 22 (1960); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 218-219 (1974) (plaintiff must assert a legally cognizable injury in fact before federal courts have jurisdiction). "The essence of a standing question is whether the plaintiff has alleged 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the illumination of difficult constitutional questions[.]' *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703

8

7 L.Ed.2d 663 (1962)."  *Saladin v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987); *Harris v. McRae*, 448 U.S. 297, 320 (1981) (same).

Standing involves two aspects.  The first is the minimum "case or controversy" constitutional requirement of Article III.  *Saladin*, 812 F.2d at 690.  "To satisfy this 'irreducible' constitutional minimum required for standing, a litigant must show 1) that he personally has suffered an actual or prospective injury as a result of the putatively illegal conduct; 2) that the injury can be fairly traced to the challenged conduct; and 3) that the injury is likely to be redressed through court action."  *Saladin*, 812 F.2d at 690, citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982); *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  If any element is lacking, a plaintiff's claim is not viable.  In addition, the Supreme Court has established several requirements for standing based on prudential considerations.  *Saladin*, 812 F.2d at 690 (internal citations omitted) ("The Supreme Court has ... stated that, in addition to these essential constitutional requirements, a court should consider the case in light of three principles which might counsel judicial constraint, referred to as 'prudential' considerations.... Those considerations are 1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; 2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and 3) whether the plaintiff is

9

asserting his or her own legal rights and interests rather than the legal rights and interests of third parties").

With respect to any claims presented herein regarding conditions of confinement to which other inmates have been subjected at Kilby, Hill lacks standing to assert the constitutional rights of other persons as he is not "asserting his ... own legal rights and interests [but] rather ... the legal rights and interests of third parties." *Saladin*, 812 F.2d at 690; *Allen v. Wright*, 468 U.S. 737, 751 (1984). These claims therefore entitle Hill to no relief and summary judgment on such claims is due to be granted in favor of the defendants.

### C.  Access to Courts

Throughout the pleadings filed in this case, Hill references a denial of his right of access to the courts. The law directs that incarcerated persons are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance recognized in *Bounds*. Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program or access provided by officials. *Lewis*, 518 U.S. at 349. In identifying the particular right protected by *Bounds*, the Court explained that "*Bounds* established no

10

... right [to a law library or to legal assistance].  The right that *Bounds* acknowledged was the (already well-established) right of ***access to the courts***....  [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'"  *Id*. at 350-351 (emphasis in original) (citations omitted).  The Court further opined *Bounds* did not require "that the State ... enable the prisoner to ***discover grievances***, and to ***litigate effectively*** once in court....  To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] ... the Constitution requires."  *Id*. at 354 (emphasis in original).

     The Court similarly rejected the argument that the mere claim of a systemic defect, without a showing of actual injury, presented a claim sufficient to confer standing.  *Id*. at 349.  Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an inmate's capability to present claims.  518 U.S. at 356.  "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.  When any inmate ... shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he

11

demonstrates" the requisite actual injury. *Lewis*, 518 U.S. at 356. Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement.... [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Id*. at 356-357. "[T]he Constitution does not require that prisoners ... be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360. The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. *Id*. at 356. A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not ... thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.' [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500." *Id*. at 363.

The undisputed evidentiary materials filed by the defendants establish correctional officials provided Hill access to legal materials during his confinement at Kilby. In addition, throughout the proceedings in this case, Hill has repeatedly demonstrated that he is both proficient and prolific at presenting and arguing the claims of his choice to this or

any other court.  Nothing before the court indicates that the actions about which Hill complains improperly impeded or adversely affected his efforts to pursue nonfrivolous legal claims.  Hill has utterly and completely failed to come forward with any evidence that the actions about which he complains deprived him of the ***capability*** of pursing claims in this or any other court.  Thus, Hill does not establish he suffered the requisite injury, *Lewis*, 518 U.S. at 356, and the defendants are therefore entitled to summary judgment on  Hill's access to courts claim.  *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

### D.  Conditions of Confinement

Hill complains the defendants subjected him to deplorable living conditions while at Kilby.  In support of this claim, Hill asserts the defendants (i) compelled him to shower in raw sewage, (ii) placed him in a cell with feces on the wall, (iii) initially provided him a soiled and torn mattress upon his placement in O-Dorm, (iv) subjected him to excessive lighting, (v) allowed excessive noise by mental health inmates, and (vi) confined him in a cell with inadequate lighting.  The defendants filed evidentiary materials which refute these claims.

> On 2-14-07 Inmate Bruce Hill ... was transported to Kilby Correctional Facility on ADOC transfer orders for Federal Court and to be placed in a single cell.  On 2-16-07 ... the Kilby Institutional Segregation Board ... conducted rounds to all single cells.  Upon arrival at Inmate Hill's cell, Inmate Hill was informed by [Captain Barrett] that he was at Kilby for Federal Court and was pending a re-classification hearing for assault on another inmate.  Inmate Hill refused to understand the aforementioned to the

13

point that he was advised ... "that's the situation" and the segregation board
moved to the next cell.   All during our segregation rounds Inmate Hill
continued to be loud and belligerent....   Hill [began] inciting other inmates
on the tier and even referred to [the classification supervisor] as a "Bitch".
[Based on Hill's disruptive behavior, officers] discussed moving Inmate Hill
to L-Block to defuse any further disruptions by Inmate Hill on the tier.
Inmate Hill was later moved to L-Block which is an annex of the segregation
unit.

　　　　On 3-19-07 the final approval from the ADOC Central Review Board
to Kilby's Classification Unit indicated that Inmate Hill's custody level be
raised to CLOSE....

　　　　[In light of letters Hill wrote deputy warden Rowell, Captain Barrett]
personally and visually inspected the showers on L-Block and O-Block [on
March 23, 2007].... [T]he shower areas [were] sanitary and in good working
order.  On this same date the institutional segregation board also conducted
rounds.   While at Inmate Hill's cell, he was served the final copy of his
custody increase.... [Captain Barrett discussed various issues with Hill].
Inmate Hill, again, had no understanding of what [Barrett] was attempting
to explain to him, i.e., the showers, his status at Kilby, or the law library
procedures.   There are six (6) cells on L-Block and Inmate Hill was
attempting to incite these inmates by yelling how Kilby treats inmates
unfairly and how he knew what to do about leaving Kilby.  On 3-23-07 after
completing the segregation rounds, [officers Barrett and Streeter] discussed
moving Hill to O-Dorm, an annex of the segregation unit, again, to help
defuse Hill's attempt to incite the other inmates.   On 4-6-07 during
segregation rounds [Captain Barrett] spoke with Inmate Hill regarding his
issues.  Seemingly, every time I answered one issue Inmate Hill would bring
up another, i.e. his disciplinaries, his custody, why he was at Kilby, the law
library and why he was being house[d] in a mental health unit.  Kilby does
not have a Mental Health Unit.   This Unit was moved to Bullock
Correctional Facility in [2006] leaving Kilby with no Mental Health Unit per
say.

*Correctional Defendants' Exhibit 2 to the June 11, 2007 Special Report (Affidavit of Bobby*

*Barrett) - Court Doc. No. 40-3* at 1-2.  The correctional defendants likewise deny any

14

excessive lighting or darkness in Hill's cell and dispute the allegation that his cell on O-

Block lacked adequate ventilation.

> [It is] normal procedure throughout the institution to turn the lights on
> [at 4:00 a.m.] when feeding chow....  Every cell in the prison has a low
> wattage security light in it that automatically comes on when the two
> overhead light fixtures are turned off at 10 PM.
> O-Block has two fluorescent ceiling light fixtures containing two [2] 40W
> bulbs each that are turned on during day light hours and during breakfast
> feeding hours.  When these two sets of overhead fluorescent lights are turned
> off in all the cells at [approximately] 10:00 PM, then a tiny dim fluorescent
> night/security light fixture [approximately] 6" long and 2" wide comes on
> which allows the officers to see inside the cells during the night.  This
> [approximately] 15 watt light fixture will remain on until the next morning
> when the larger fluorescent lights are turned on for the breakfast feeding and
> stay on until [approximately] 10 PM that night.
> Inmate Hill alleges there was no ventilation in his O-Block Cell.  This
> entire O-Block unit has a central air and heating system.  Each cell has a vent
> for ventilation.  There is a long narrow window on the outside wall of each
> cell that provides additional lighting during the day time.

*Correctional Defendants' Exhibit 3 to the June 11, 2007 Special Report (Supplemental*

*Affidavit of Bobby Barrett) - Court Doc. No. 40-4* at 1-2.  The correctional defendants also

assert they did not place Hill in a cell covered with feces and maintain the mattress

provided to Hill upon his placement on O-Block was neither dirty nor torn.  *Correctional*

*Defendants' Exhibit 9 to the June 11, 2007 Special Report (Affidavit of Willie Jackson) -*

*Court Doc. No. 40-10*; *Correctional Defendants' Exhibit 1 to the June 11, 2007 Special*

*Report (Affidavit of Otis Barnes) - Court Doc. No. 40-2*.  However, when officers did

observe a tear in the mattress, they "replaced the mattress due to [the] rip."  *Correctional*

15

*Defendants' Exhibit 17 to the June 11, 2007 Special Report (Affidavit of Allan D. Smith) - Court Doc. No. 40-18.* Finally, the defendants maintain that officers assigned to the segregation unit routinely inspect all areas of the unit and, when needed, secure those services necessary to ensure proper maintenance of the unit. *Correctional Defendants' Exhibit 15 to the June 11, 2007 Special Report (Affidavit of W. G. Rowell) - Court Doc. No. 40-16 at 1-2.*

Only those conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "'[T]he Constitution does not mandate comfortable prisons.' *Id.* at 349, 101 S.Ct. at 2400. If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.' *Id.* at 347, 101 S.Ct. at 2399. Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.' *Id.*" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). A prison official may likewise be held liable under the Eighth Amendment for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a

16

substantial risk of serious harm, of which the official is subjectively aware,  ... and [that] the official does not respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844, 114 S.Ct. at 1982-1983.

In order to survive summary judgment on his claims challenging the conditions of confinement at Kilby, Hill is therefore "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation."  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) ("To be deliberately indifferent, Defendants must have been 'subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind.'"' *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also 'draw that inference.' *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.").

The living conditions within a prison will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain.... Conditions ..., alone or in combination, may deprive inmates of the minimal civilized

17

measure of life's necessities.  Such conditions could be cruel and unusual under the contemporary standard of decency ....  But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Rhodes*, 452 U.S. at 347. "[C]onduct that does not purport to be punishment at all [such as claims related to conditions of confinement] must involve more than ordinary lack of due care for the prisoner's interests or safety....  It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

To determine whether conditions of confinement constitute cruel and unusual punishment violative of the Eighth Amendment, the court must look to "the effect" the condition has upon the inmate. *Rhodes*, 452 U.S. at 366.  In a case involving conditions of confinement generally or several different conditions, the court is required to consider whether the claims together amount to conditions which fall below constitutional standards. *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb County*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L. Ed. 2d 894 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).  The court's consideration of whether the totality of the plaintiff's claims amount to conditions which fall below applicable

18

constitutional standards is limited by the Supreme Court's admonishment that "*[s]ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need....  To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes.  Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson*, 501 U.S. at 304-305 (emphasis in original).

As is clear from a review of the complaint, Hill presents an almost limitless array of alleged unconstitutional conditions at Kilby.  Such pleading is clearly the type of unstructured "overall conditions" complaint that the Supreme Court found without constitutional merit in *Wilson*.  Notwithstanding the foregoing, the impact of these allegations also does not rise to the level of cruel and unusual punishment because the plaintiff presented no evidence, sufficiently probative or otherwise, which shows obduracy or wantonness on the part of the defendants. *Whitley*, 475 U.S. at 319.  Moreover, Hill, other than an alleged foot irritation, fails to demonstrate any effect the alleged constitutional violations had upon him.  Instead, his complaint and responses focus upon potential risks, possible consequences and speculative damages.

19

Upon careful review of the evidentiary materials filed in this case, the court concludes that the challenged conditions did not deprive Hill of the minimal civilized measure of life's necessities nor subject him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 347. In addition, the evidence before the court simply does not support a finding that the defendants acted with deliberate indifference or reckless disregard to Hill's constitutional rights. The conditions at Kilby, although uncomfortable or even harsh, do not constitute cruel and unusual punishment. *Rhodes*, 452 U.S. at 349; *Farmer*, 511 U.S. at 833. "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Consequently, summary judgment is due to be granted in favor of the defendants on these claims. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.

### E. Threatening Language

Hill complains defendant Streeter verbally threatened him. An essential element of a 42 U.S.C. § 1983 action is that the conduct complained of deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999); *Parratt v. Taylor*, 451 U.S. 527 (1981). The statements about which

the plaintiff complains, standing alone, do not violate the Constitution. *Cf. Paul v. Davis*, 424 U.S. 693 (1976). Threatening, derogatory or abusive comments made by a correctional officer to an inmate do not rise to the level of a constitutional violation. *Sepulveda v. Burnside*, 170 Fed. Appx. 119, 124 (11th Cir. 2006) (reference to plaintiff "as a 'snitch' in the presence of other inmates" does not rise to the level of a constitutional violation); *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (verbal taunts directed at plaintiff do not violate his constitutional rights); *McFadden v. Lucas*, 713 F.2d 143; 147 (5th Cir. 1983) (threatening demeanor of officers undertaken "to enforce reasonable security needs are not violative of a prisoner's constitutional rights."); *see also Johnson v. Glick*, 481 F.2d 1028 (2nd Cir. 1973). Thus, the threats about which Hill complains fail to demonstrate that defendant Streeter deprived him of any protected right, privilege or immunity. Consequently, this claim entitles Hill to no relief.

### F. Fabricated Disciplinaries Claim

Hill contends defendant Streeter "wrote three fabricated infractions" against him after they argued over the alleged soiled mattress. *Plaintiff's Amendment to the Complaint - Court Doc. No. 6* at 3. Defendant Streeter denies this allegation and asserts he initiated the disciplinary actions because Hill refused to obey a direct order, threatened to kill him, and acted in a disruptive manner. *Correctional Defendants' Exhibit 13 to the June 11, 2007 Special Report (Affidavit of William Streeter) - Court Doc. No. 40-14* at 2.

21

On [the morning] of March 13, 2007, .... inmate Hill [requested] to talk to me (Sgt. Streeter).  [I] entered O-Dorm's exercise yard where inmate Hill was walking.  Inmate Hill approached [me] and stated "what is this, why am I down here."  Inmate Hill also stated, "I'm going to show you these white folks don't care about you ni-----."  [I] then attempted to counsel inmate Hill about his behavior with negative results. [Subsequently, I] gave inmate Hill a direct order to start back walking on the yard.  Inmate Hill replied ...  "I'm going to do what I got to do.  I'm going to get from back here."  "I don't care if it takes tearing up that cell".  [I then] informed inmate Hill that destruction of state property will not be tolerated and a cell extraction would take place if necessary.  Inmate Hill immediately stopped walking and returned to [my] presence and stated, "If they put me and you in a cell together, I will kill you".  [I] verbally reprimanded inmate Hill and ordered [officer] Rowe to escort inmate Hill back to his assigned cell....  Inmate Hill continued to yell in obscenities and stated "I don't' give a f--- about a disciplinary, I got (117) one hundred and seventeen of them....  Disciplinary action was initiated against inmate Hill for Rule Violations #44-Threats, #56-Failure to Obey a Direct Order, and #57-Insubordination.

*Correctional Defendants' Exhibit 13 to the June 11, 2007 Special Report (Affidavit of William Streeter) - Court Doc. No. 40-14* at 2; *Correctional Defendants' Exhibit A to the October 12, 2007 Supplemental Response (Incident Report KCF 07-217) - Court Doc. No. 68-2* at 43-44 (same).  Thus, defendant Streeter does not admit that the information on which he based the disciplinaries is false.  While *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991) establishes a constitutional claim for the knowing use of false information by prison officials, the instant case is controlled by *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043, 103 S.Ct. 462 (1982).  In *Slocum*, the Court held that prisoners do not state a due process claim by merely

asserting that false or erroneous information may exist.  678 F.2d at 942.  Moreover,

"prisoners cannot make a conclusory allegation regarding the use of [false] information as

the basis of a due process claim."  *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001).

Hill simply makes the conclusory allegation that defendant Streeter based the

disciplinary infractions on frivolous accusations.  This allegation does not state a viable

claim for relief.  *Jones*, 279 F.3d at 946; *Monroe*, 932 F.2d at 1142; *Slocum*, 678 F.2d at

942.  In addition, Hill has failed to come forward with any evidence that defendant Streeter

knowingly used false information during the disciplinary process; rather, the record in this

case establishes that defendant Streeter did not rely on ***admittedly*** false information in his

decision to initiate the disciplinary actions against Hill.  Consequently, the plaintiff is

entitled to no relief as a matter of law and summary judgment is due to be granted in favor

of  defendant Streeter on this claim.

### G.  Retaliation

Hill complains defendant Streeter initiated and processed the disciplinary actions

against him in retaliation for expressing grievances regarding the conditions of Kilby.

Defendant Streeter, however, maintains he disciplined Hill solely because Hill's statements

and behavior towards him on the exercise yard constituted violations of institutional rules

and regulations, i.e, Hill disobeyed a direct order, threatened Streeter, and used profane,

defiant and threatening language in response to an order issued by Streeter.  *Correctional*

*Defendants' Exhibit 13 to the June 11, 2007 Special Report (Affidavit of William Streeter) - Court Doc. No. 40-14* at 2; *Correctional Defendants' Exhibit A to the October 12, 2007 Supplemental Response (Incident Report KCF 07-217) - Court Doc. No. 68-2* at 43-44.

Federal law recognizes "that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807 (1974)]. As the *Martinez* Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.' *Id.*, at 404-405, 94 S.Ct., at 1807. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources...." *Turner v. Safley*, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259 (1987). Correctional officials are therefore "accorded latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081 (1972), which necessarily includes "the [inescapable] withdrawal or limitation of many [inmate] privileges and rights." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974) (quotation marks and citation omitted); *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1877 (1979).

"In the First Amendment context, ... some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S.Ct. 1475, 1479 (2001), quoting *Pell*,

24

417 U.S. at 822, 94 S.Ct. at 2804.  In accordance with this principle, an inmate's rights established under the First Amendment are not protected if allowing such protection is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Pell*, 417 U.S. at 822, 924 S.Ct. at 2804.  Thus, while inmates retain a constitutional right protected by the First Amendment to freely exercise their grievances, this right is limited by the fact of incarceration and valid penological objectives such as maintaining institutional security and order.  The law is well settled that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves."  *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Bell v. Wolfish,* 441 U.S. at 546, 99 S.Ct. at 1878 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.").  It is therefore clear that preservation of security and order within a correctional facility is essential to the facility's effective administration and constitutes both a compelling and substantial governmental interest.  *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Lawson v. Singletary*, 85 F.3d 502, 512 (11th Cir. 1996); *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996).

"The first amendment prohibits state officials from retaliating against prisoners for exercising their right of free speech.  *See, e.g., Wright v. Newsome*, [795 F.2d 964, 968

(11th Cir. 1986)].... The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1241-1242 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "In prison, of course, first amendment rights are not absolute. *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Legitimate policies and goals of the correction system may justify restrictions limiting prisoners' [first amendment] rights. 417 U.S. at 821." *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986). "A prisoner retains those First Amendment rights that are 'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system.' *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (resist)) (internal quotation marks omitted).... [P]rison authorities have a legitimate penological interest in the consistent enforcement of prison rules and ... disciplining prisoners who attempt to coerce a guard into not enforcing prison rules is reasonably related to that interest." *Hargis v. Foster*, 312 F.3d 404, 409-410 (9th Cir. 2002); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989). The situation is somewhat complicated when the alleged act of retaliation is undertaken to assure compliance with prison rules as inmates often attempt to "inappropriately insulate themselves from [such] actions by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*

*sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).

To proceed on a claim for retaliation under the First Amendment and withstand the entry of summary judgment, an "inmate must establish ... three elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendant's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999).  With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred.  *Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

Hill alleges defendant Streeter retaliated against him for expressing his grievances regarding various conditions at Kilby, thus satisfying the first element of his retaliation claim.  *Smith*, 532 F.3d at 1277.  The second element requires Hill to demonstrate that the disciplinary "would likely deter a [prisoner] of ordinary firmness" from expressing his political beliefs.  *Id*.  This "presents an objective standard and a factual inquiry." *Id*.  The court assumes *arguendo* that this standard has been met.  Nevertheless, Hill fails to satisfy

27

the third requisite element of a retaliation claim - a causal connection between his constitutionally protected activity and the adverse actions of defendant Streeter.

The causal connection inquiry focuses on the "subjective motivation of the defendant[,]" *Thaddeus-X*, 175 F.3d at 399, and this court must therefore determine "whether the defendant[] [was] subjectively motivated to discipline" Hill for expressing his discontent with the conditions at Kilby. *Smith*, 532 F.3d at 1278. The subjective motivation issue is resolved by most courts under the burden-shifting formula set forth in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977). This formula requires that the plaintiff first meet "his burden of establishing that his protected conduct was a motivating factor behind any harm" and then "the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399, referencing the *Mt. Healthy* motive analysis.

It is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging adverse actions of correctional personnel. *Woods*, 60 F.3d at 1166. "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983). This is [necessary because prisoners'] ... claims of retaliation are ... easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so

28

because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected and that this conduct ... was a 'motivating factor'" behind the adverse actions of the defendant. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. At 576. Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166. Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation. *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations."). If an inmate meets his burden with appropriate evidence, the burden of production shifts to the defendants to show that they "would have reached the same decision as to [plaintiff's discipline] even in the absence of the protected conduct." *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. "Under the *Mt. Healthy* approach, if the government official 'can prove that [he] would have taken the adverse action in the absence of the plaintiff's protected

29

conduct, [he] cannot be held liable.' *Thaddeus-X*, 175 F.3d at 388 n.4...." *Smith*, 532 F.3d at 1278 n.22.

Hill makes the conclusory and speculative assertion that defendant Steeter initiated the disciplinaries because he submitted letters to the deputy warden which challenged the conditions of the segregation unit at Kilby. Hill has submitted no direct evidence that his stated grievances were the motivating factor in defendant Streeter's actions and nothing in any of Hill's responses suggests the disciplinaries were a mere pretext to punish Hill for voicing his grievances. Defendant Streeter adamantly denies this allegation and argues the adverse actions about which Hill complains occurred in an effort to maintain security and due to the manner in which Hill addressed him during their conversation on the exercise yard, not because of the grievances expressed by Hill.

Hill offers only his conclusory allegation of ultimate fact that Streeter retaliated against him for expressing his complaints regarding the conditions at Kilby. This allegation is insufficient to defeat summary judgment. *Waddell*, 276 F.3d at 1279; *Holifield*, 115 F.3d at 1564, n.6. The record before the court is devoid of admissible or potentially admissible evidence, direct or otherwise, from which a reasonable fact finder could infer the requisite motivating factor. Additionally, the circumstances, when taken as a whole, do not support making such an inference. Thus, Hill's retaliation claim falters on this element. Moreover, even assuming a reasonable fact finder could infer the

motivating factor element, it is clear defendant Streeter would have initiated and prosecuted Hill for threats, failure to obey a direct order and insubordination despite his letters to the deputy warden. "Objective prison administrators standing in [the defendant's] shoes would assume that the gist of what [Hill] said [to Streeter on the exercise yard] ... and the language he employed, which reeked of disrespect for the [officer's] authority, would be noised about the prison's population and, if ignored, could seriously impede their ability to maintain order and thus achieve the institution's penological objectives." *Smith*, 532 F.3d at 1279. Consequently, defendant Streeter is entitled to summary judgment on the retaliation claim as Hill fails to establish by appropriate evidence a causal relationship between the alleged protected activity and the disciplinary actions taken against him. *Id.* at 1278-1279.

## H. Medical Treatment

In his complaint, as amended, Hill asserts the medical defendants, nurse Linda Bell and Prison Health Services, Inc., failed to properly dispense his medication on an occasion in March of 2007. *Plaintiff's Amendment to Complaint - Court Doc. No. 6* at 5. In response to the special report filed by the medical defendants, Hill further asserts nurse Yolanda Hardy failed to provide him blood pressure medication throughout February and March of 2007.[3] The medical defendants deny they acted with deliberate indifference to

---

[3]Yolanda Harvey is not a defendant in this cause of action.

Hill's medical needs and, instead, maintain health care personnel provided Hill all necessary and appropriate treatment while he was confined at Kilby.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that those responsible for providing such treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). "In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a

constitutional violation merely because the victim is a prisoner.'); *Mandel,* 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).   Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.   *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977))."   *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985) (mere fact that a prisoner desires a different mode of medical treatment does not amount to deliberate indifference).   A facility's health care provider and its personnel may be held liable under the Eighth Amendment only for acting with deliberate indifference to an inmate's health when they know that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.   *Farmer v. Brennan*, 511 U.S. 825 (1994).

No extended discussion of the facts is necessary.   The medical records filed herein demonstrate that Hill consistently received his medications, including medication for controlling his high blood pressure, in accordance with the applicable orders of prescribing physicians.   *Medical Defendants' Exhibit A to the May 15, 2007 Special Report (Inmate Medical Records of Bruce Lamar Hill) - Court Doc. No. 29-2 through 29-3*; *Medical*

*Defendants' Exhibit B to the May 15, 2007 Special Report (Inmate Medical Records of Bruce Lamar Hill) - Court Doc. No. 29-4*; *Medical Defendants' Exhibit A to the July 31, 2007 Supplemental Special Report (Additional Medical Records of Bruce Lamar Hill) - Court Doc. No. 52-2*.   On February 23, 2007, Hill submitted a sick call request advising that his "blood pressure medication" prescription expired in few days and requested a "refill."   *Medical Defendants' Exhibit B to the May 15, 2007 Special Report  (Medical Records of Bruce Lamar Hill) - Court Doc. No. 29-4* at 3.   Hill, however, made no mention of not receiving his blood pressure medication as prescribed.   *Id*.   In response to this request, Dr. Robbins renewed Hill's blood pressure medication prescription for Clonidine on February 28, 2007 and allowed the prescription to run for ninety (90) days.   *Id.* at 6. The medical records further demonstrate that the prison medical staff placed Hill in the chronic care clinic for routine monitoring of his hypertension, routinely examined Hill, thoroughly evaluated his complaints, provided various medical profiles, and ordered laboratory and radiological tests in accordance with their professional judgment.   *Id*.   In addition, although Hill had unfettered access to medical personnel and submitted several sick call requests seeking medical treatment for various ailments, none of his requests mentioned the alleged denial of blood pressure medication.

The affidavit filed by Yolanda Harvey addresses the claims presented by Hill as follows:

"       .... It is my understanding that Mr. Hill has made an allegation in this matter that I improperly dispensed his medication to him in March of 2007. Mr. Hill's allegation in this regard are untrue.

I do remember an incident that occurred on a weekend in March of [2007] regarding Mr. Hill's medication. I was working on the Day Shift and it was "Pill Call." I had placed Mr. Hill's medication in a cup to administer to him. I approached Officer Washington and advised him that I needed to give Mr. Hill his medication. Mr. Hill was being held in [the segregation unit which required an officer escort for] a nurse during Pill Call. Officer Washington was the only officer working this Post ... [and] stated that he was getting ready to begin Diabetic Pill Call.... I continued to wait for Officer Washington until after 4:00 p.m., which was after my shift had ended.

Diabetic Pill Call was still going on and I spoke with Nurse Audrey Willis the evening shift nurse and advised her that I had not given Mr. Hill his medication. I asked Nurse Willis if she would administer Mr. Hill his medication and she said she would. I then left for the day and this was sometime after 4:00 p.m. [Later during the evening shift, another nurse administered Hill his medication.]

Mr. Hill was not denied his medication from me or any other PHS personnel at Kilby. At no time have I or any of the PHS staff at Kilby Correctional Facility denied Mr. Hill any needed medical treatment or medication, nor have we ever acted with deliberated indifference to any serious medical need of Mr. Hill. At all times, Hill's known medical complaints and conditions have been addressed as promptly as possible under the circumstances."

*Medical Defendant's Exhibit C to the May 15, 2007 Special Report (Affidavit of Yolanda Harvey) - Court Doc. No. 29-5* at 2-4; *see also Correctional Defendants' Exhibit A to the October 12, 2007 Supplemental Response (Incident Report of Nurse Gene Lysykanycz) - Court Doc. No. 68-2* at 48 (all prescribed medications provided to Hill on evening of March 11, 2007).

Under the circumstances of this case, it is clear that the course of treatment

undertaken by medical personnel at the Kilby Correctional Facility was neither grossly incompetent nor inadequate. Hill has failed to present any evidence which indicates the medical defendants knew that the manner in which they dispensed his medication created a substantial risk to his health and that with this knowledge consciously disregarded such risk. The record is devoid of evidence, significantly probative or otherwise, showing that the medical defendants acted with deliberate indifference to Hill's medical needs. Summary judgment is therefore due to be granted in favor of the defendants with respect to Hill's claim that their actions constituted deliberate indifference in dispensing medication for treatment of his hypertension.

### IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motions for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before May 11, 2009, the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general

objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 28th day of April, 2009.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

37